IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF NORTH CAROLINA

| | | |
|---|---|---|
| TASHA E. PENNY, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | 1:15CV1074 |
| | ) | |
| NANCY A. BERRYHILL,[1] | ) | |
| Acting Commissioner of Social Security, | ) | |
| | ) | |
| Defendant. | ) | |

MEMORANDUM OPINION AND RECOMMENDATION
OF UNITED STATES MAGISTRATE JUDGE

Plaintiff Tasha Penny ("Plaintiff") brought this action pursuant to Sections 205(g) and 1631(c)(3) of the Social Security Act (the "Act"), as amended (42 U.S.C. §§ 405(g) and 1383(c)(3)), to obtain judicial review of a final decision of the Commissioner of Social Security denying her claims for Disability Insurance Benefits and Supplemental Security Income under, respectively, Titles II and XVI of the Act. The parties have filed cross-motions for judgment, and the administrative record has been certified to the Court for review.

I.      PROCEDURAL HISTORY

Plaintiff filed applications for Disability Insurance Benefits and Supplemental Security Income Benefits in 2012, alleging a disability onset date of March 13, 2006. (Tr. at 16, 237-

---

[1] Nancy A. Berryhill became the Acting Commissioner of Social Security on January 23, 2017. Pursuant to Rule 25(d) of the Federal Rules of Civil Procedure, Nancy A. Berryhill should be substituted for Carolyn W. Colvin as the Defendant in this suit. No further action need be taken to continue this suit by reason of the last sentence of section 205(g) of the Social Security Act, 42 U.S.C. § 405(g).

249.)² Her applications were denied initially (Tr. at 103-26, 156-73) and upon reconsideration (Tr. at 127-52, 174-91). Thereafter, Plaintiff requested an administrative hearing *de novo* before an Administrative Law Judge ("ALJ"). (Tr. at 192-94.) Plaintiff attended the subsequent hearing on July 9, 2014, along with her attorney and an impartial vocational expert. At the hearing, Plaintiff amended her alleged onset date to July 28, 2010 in light of a prior, final administrative decision finding no disability through July 27, 2010. (See Tr. at 16, 300.)

The ALJ ultimately concluded that Plaintiff was not disabled within the meaning of the Act from her amended onset date through September 18, 2014, the date of his decision. (Tr. at 29-30.) On November 23, 2015, the Appeals Council denied Plaintiff's request for review of the decision, thereby making the ALJ's conclusion the Commissioner's final decision for purposes of judicial review. (Tr. at 1-5.)

## II. LEGAL STANDARD

Federal law "authorizes judicial review of the Social Security Commissioner's denial of social security benefits." Hines v. Barnhart, 453 F.3d 559, 561 (4th Cir. 2006). However, the scope of review of such a decision is "extremely limited." Frady v. Harris, 646 F.2d 143, 144 (4th Cir. 1981). "The courts are not to try the case de novo." Oppenheim v. Finch, 495 F.2d 396, 397 (4th Cir. 1974). Instead, "a reviewing court must uphold the factual findings of the ALJ if they are supported by substantial evidence and were reached through application of the correct legal standard." Hancock v. Astrue, 667 F.3d 470, 472 (4th Cir. 2012) (internal quotation omitted).

---

² Transcript citations refer to the Sealed Administrative Record [Doc. #7].

"Substantial evidence means 'such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.'" Hunter v. Sullivan, 993 F.2d 31, 34 (4th Cir. 1993) (quoting Richardson v. Perales, 402 U.S. 389, 390 (1971)). "It consists of more than a mere scintilla of evidence but may be somewhat less than a preponderance." Mastro v. Apfel, 270 F.3d 171, 176 (4th Cir. 2001) (internal citations and quotation marks omitted). "If there is evidence to justify a refusal to direct a verdict were the case before a jury, then there is substantial evidence." Hunter, 993 F.2d at 34 (internal quotation marks omitted).

"In reviewing for substantial evidence, the court should not undertake to re-weigh conflicting evidence, make credibility determinations, or substitute its judgment for that of the [ALJ]." Mastro, 270 F.3d at 176 (internal brackets and quotation marks omitted). "Where conflicting evidence allows reasonable minds to differ as to whether a claimant is disabled, the responsibility for that decision falls on the ALJ." Hancock, 667 F.3d at 472. "The issue before [the reviewing court], therefore, is not whether [the claimant] is disabled, but whether the ALJ's finding that [the claimant] is not disabled is supported by substantial evidence and was reached based upon a correct application of the relevant law." Craig v. Chater, 76 F.3d 585, 589 (4th Cir. 1996).

In undertaking this limited review, the Court notes that "[a] claimant for disability benefits bears the burden of proving a disability." Hall v. Harris, 658 F.2d 260, 264 (4th Cir. 1981). In this context, "disability" means the "'inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be

3

expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months.'" Id. (quoting 42 U.S.C. § 423(d)(1)(A)).[3]

"The Commissioner uses a five-step process to evaluate disability claims." Hancock, 667 F.3d at 472 (citing 20 C.F.R. §§ 404.1520(a)(4); 416.920(a)(4)). "Under this process, the Commissioner asks, in sequence, whether the claimant: (1) worked during the alleged period of disability; (2) had a severe impairment; (3) had an impairment that met or equaled the requirements of a listed impairment; (4) could return to her past relevant work; and (5) if not, could perform any other work in the national economy." Id.

A finding adverse to the claimant at any of several points in this five-step sequence forecloses a disability designation and ends the inquiry. For example, "[t]he first step determines whether the claimant is engaged in 'substantial gainful activity.' If the claimant is working, benefits are denied. The second step determines if the claimant is 'severely' disabled. If not, benefits are denied." Bennett v. Sullivan, 917 F.2d 157, 159 (4th Cir. 1990).

On the other hand, if a claimant carries his or her burden at the first two steps, and if the claimant's impairment meets or equals a "listed impairment" at step three, "the claimant is disabled." Mastro, 270 F.3d at 177. Alternatively, if a claimant clears steps one and two, but falters at step three, i.e., "[i]f a claimant's impairment is not sufficiently severe to equal or exceed a listed impairment," then "the ALJ must assess the claimant's residual functional

---

[3] "The Social Security Act comprises two disability benefits programs. The Social Security Disability Insurance Program (SSDI), established by Title II of the Act as amended, 42 U.S.C. § 401 et seq., provides benefits to disabled persons who have contributed to the program while employed. The Supplemental Security Income Program (SSI), established by Title XVI of the Act as amended, 42 U.S.C. § 1381 et seq., provides benefits to indigent disabled persons. The statutory definitions and the regulations promulgated by the Secretary for determining disability, see 20 C.F.R. pt. 404 (SSDI); 20 C.F.R. pt. 416 (SSI), governing these two programs are, in all aspects relevant here, substantively identical." Craig, 76 F.3d at 589 n.1.

capacity ('RFC')." Id. at 179.[4] Step four then requires the ALJ to assess whether, based on that RFC, the claimant can "perform past relevant work"; if so, the claimant does not qualify as disabled. Id. at 179-80. However, if the claimant establishes an inability to return to prior work, the analysis proceeds to the fifth step, which "requires the [Government] to prove that a significant number of jobs exist which the claimant could perform, despite the claimant's impairments." Hines, 453 F.3d at 563. In making this determination, the ALJ must decide "whether the claimant is able to perform other work considering both [the claimant's RFC] and [the claimant's] vocational capabilities (age, education, and past work experience) to adjust to a new job." Hall, 658 F.2d at 264-65. If, at this step, the Government cannot carry its "evidentiary burden of proving that [the claimant] remains able to work other jobs available in the community," the claimant qualifies as disabled. Hines, 453 F.3d at 567.

III. DISCUSSION

In the present case, the ALJ found that Plaintiff had not engaged in "substantial gainful activity" since her amended alleged onset date. Plaintiff therefore met her burden at step one of the sequential evaluation process. At step two, the ALJ further determined that Plaintiff suffered from the following severe impairments:

---

[4] "RFC is a measurement of the most a claimant can do despite [the claimant's] limitations." Hines, 453 F.3d at 562 (noting that administrative regulations require RFC to reflect claimant's "ability to do sustained work-related physical and mental activities in a work setting on a regular and continuing basis . . . [which] means 8 hours a day, for 5 days a week, or an equivalent work schedule" (internal emphasis and quotation marks omitted)). The RFC includes both a "physical exertional or strength limitation" that assesses the claimant's "ability to do sedentary, light, medium, heavy, or very heavy work," as well as "nonexertional limitations (mental, sensory, or skin impairments)." Hall, 658 F.2d at 265. "RFC is to be determined by the ALJ only after [the ALJ] considers all relevant evidence of a claimant's impairments and any related symptoms (*e.g.*, pain)." Hines, 453 F.3d at 562-63.

>MRI findings of mild lumbar protrusion and degenerative facet changes; carpal tunnel syndrome of the right hand; diabetes mellitus, type II with mild neuropathy; depression; and anxiety.

(Tr. at 19.) The ALJ found at step three that none of these impairments met or equaled a disability listing. (Tr. at 19-21.) Therefore, the ALJ assessed Plaintiff's RFC and determined that she could perform light work with the following nonexertional limitations:

> [L]ifting and carrying, pushing and pulling 20 pounds occasionally and 10 pounds frequently, standing, walking and sitting six hours in an eight-hour workday. The claimant is limited to no frequent grasping or fingering with the right hand. The claimant is able to understand, remember, and carry out simple instructions involving up to a four-step process, [and] sustain attention and concentration for repetitive tasks with no production quota requirements. She is capable of occasional crawling, squatting, and climbing steps, and precluded from unprotected heights, climbing ladders or using scaffoldings.

(Tr. at 21-22.) Based on this determination, the ALJ found under step four of the analysis that Plaintiff could not return to any of her past relevant work. (Tr. at 28.) However, based on the vocational expert's testimony, the ALJ determined at step five, that, given Plaintiff's age, education, work experience, and RFC, she could perform other jobs available in the national economy. (Tr. at 28-29.) Therefore, the ALJ concluded that Plaintiff was not disabled under the Act. (Tr. at 29.)

Plaintiff now challenges the ALJ's decision in three respects. First, at step three of the sequential analysis, Plaintiff contends that the ALJ failed to appropriately consider whether her depression and anxiety met 20 C.F.R. Part 404, Subpart P, Appendix 1 §§ 12.04 and 12.06 (hereinafter "Listings 12.04 and 12.06"). Second, Plaintiff challenges the ALJ's RFC assessment. Third and finally, Plaintiff argues that the ALJ failed to properly weigh the opinion of Dr. Amy Fairchild. (Pl.'s Br. [Doc. #13] at 3.) Because Dr. Fairchild's opinion forms the

primary basis for all three of Plaintiff's arguments, the Court addresses the third argument first.

### A. Dr. Fairchild's Opinion

Plaintiff contends that the ALJ erred by failing to give controlling weight to a Medical Statement from Dr. Amy Fairchild of Turning Point Family Care. Plaintiff appears to be raising a claim that the ALJ failed to properly apply 20 C.F.R. §§ 404.1527(c)(2) and 416.927(c)(2), better known as the "treating physician rule." The treating physician rule generally requires an ALJ to give controlling weight to the well-supported opinion of a treating source as to the nature and severity of a claimant's impairment, based on the ability of treating sources to

> provide a detailed, longitudinal picture of [the claimant's] medical impairment(s) [which] may bring a unique perspective to the medical evidence that cannot be obtained from the objective medical findings alone or from reports of individual examinations, such as consultative examinations or brief hospitalizations.

20 C.F.R. §§ 404.1527(c)(2) and 416.927(c)(2). However, if a treating source's opinion is not "well-supported by medically acceptable clinical and laboratory diagnostic techniques or is inconsistent with the other substantial evidence in the case record," it is not entitled to controlling weight. Social Security Ruling ("SSR") 96-2p, 1996 WL 374188, at *5; 20 C.F.R. §§ 404.1527(c)(2), 416.927(c)(2); see also Craig, 76 F.3d at 590; Mastro, 270 F.3d at 178. Instead, the opinion must be evaluated and weighed using all of the factors provided in 20 C.F.R. §§ 404.1527(c)(2)(i)-(c)(6) and 416.927(c)(2)(i)-(c)(6), including (1) the length of the treatment relationship, (2) the frequency of examination, (3) the nature and extent of the treatment relationship, (4) the supportability of the opinion, (5) the consistency of the opinion with the record, (6) whether the source is a specialist, and (7) any other factors that may

7

support or contradict the opinion. Moreover, even if an opinion by a treating physician is given controlling weight with respect to the nature and severity of a claimant's impairment, opinions by physicians regarding the ultimate issue of whether a plaintiff is disabled within the meaning of the Act are never accorded controlling weight because the decision on that issue is reserved for the Commissioner alone. 20 C.F.R. § 404.1527(d).

On June 16, 2014, Dr. Fairchild, a psychiatrist at Turning Point Family Care, completed two three-page checklists on Plaintiff's behalf, one entitled "Medical statement concerning depression with anxiety, OCD, PTSD or panic disorder for Social Security disability claim" (Tr. at 836-38), and the other "Medical statement concerning depression for Social Security disability claim" (Tr. at 858-60). Both forms asked Dr. Fairchild to rate Plaintiff's limitations caused by her depression or psychiatric condition with respect to "[r]estriction of activities of daily living" and "[d]ifficulty in maintaining social functioning," either Mild, Moderate, Marked, or Extreme. Dr. Fairchild indicated that Plaintiff had moderate restrictions in terms of both activities of daily living and maintaining social functioning as a result of her mental conditions. When then asked whether Plaintiff had (1) "[d]eficiencies of concentration, persistence or pace resulting in frequent failure to complete tasks in a timely manner (in work settings or elsewhere)" or (2) "[r]epeated [e]pisodes of deterioration or decompensation in work or work-like settings which cause the patient to withdraw from the situation or experience exacerbation of signs and symptoms (which may include deterioration of adaptive functioning)," Dr. Fairchild circled "Present" or "Yes" as to both. (Tr. at 836, 858.)

In the final section of each form, regarding work limitations, Dr. Fairchild was instructed to check one of four degrees of limitation, either "Not Significantly Impaired,"

8

"Moderately Impaired," "Markedly Impaired," or "Extremely Impaired," for each of twenty described abilities. In the first form, Dr. Fairchild checked boxes indicating that Plaintiff was "Markedly Impaired" in her ability to understand and remember detailed instructions, and "Moderately Impaired" in her ability to remember locations and work-like procedures, carry out detailed instructions, maintain attention and concentration for extended periods, and sustain an ordinary routine without special supervision. She found Plaintiff "Not Significantly Impaired" in her ability to understand and remember short and simple instructions, the ability to carry out very short and simple instructions, and the ability to perform activities within a schedule, maintain regular attendance, and be punctual within customary tolerances. (Tr. at 837.) On the second form limited to depression, Dr. Fairchild checked boxes indicating that Plaintiff was "Markedly Impaired" in the ability to understand and remember detailed instructions and the ability to carry out detailed instructions. (Tr. at 859.) Dr. Fairchild indicated that Plaintiff was "Moderately Impaired" in the ability to remember locations and work-like procedures, the ability to understand and remember short and simple instructions, the ability to maintain attention and concentration for extended periods, the ability to sustain an ordinary routine without special supervision, the ability to work in coordination with and proximity with others, the ability to make simple work-related decisions, and the ability to complete a normal workday and workweek without interruptions from psychologically based symptoms. (Id.) Dr. Fairchild indicated that Plaintiff was "Not Significantly Impaired" in the ability to carry out very short and simple instructions, the ability to perform activities within a schedule, maintain regular attendance, and be punctual within customary tolerances, the ability to interact appropriately with the general public, the ability to ask simple questions or request

9

assistance, the ability to accept instructions and respond appropriately to criticism from supervisors, and the ability to maintain socially appropriate behavior and to adhere to basic standards of neatness and cleanliness. Dr. Fairchild left the comments section blank and did not provide any narrative responses. (Tr. at 860.)

In his decision, the ALJ recounted Dr. Fairchild's opinions on three separate occasions. (Tr. at 25-26, 27, 28.) The ALJ explained that he assigned the opinions "some weight, but not controlling weight," as they were "very conclusory without explanation." (Tr. at 28.) The ALJ then specifically considered Dr. Fairchild's opinion that Plaintiff:

> had no more than moderate restriction in remembering locations, work-like procedures, and maintaining an ordinary routine without supervision, that she had no significant impairment in understanding, remembering and carrying out short and simple instructions, and she was capable of performing activities within a schedule and maintaining regular attendance and punctuality.

(Tr. at 28.) Thus, the ALJ did not give controlling weight to Dr. Fairchild's opinions, but the ALJ considered the opinions at length, determined that the opinions should be given some weight, and then specified those opinions in evaluating Plaintiff's RFC.[5]

In evaluating Dr. Fairchild's opinions, the ALJ noted the nature and circumstances of Plaintiff's mental health treatment and the other evidence regarding that treatment. (Tr. at 28.) Notably, Plaintiff's initial clinical assessment at Turning Point, where Dr. Fairchild practiced, took place on May 30, 2014, just two weeks before Dr. Fairchild issued the opinions in question. As recounted by the ALJ, the May 2014 assessment reflected adequate mood and

---

[5] To the extent that Dr. Fairchild's two forms, both dated June 16, 2014, included different ratings of some of Plaintiff's limitations, the ALJ specifically cited both forms and relied on Dr. Fairchild's own findings, as well as the remaining evidence in the record, in determining the weight to give Dr. Fairchild's opinions and then specifying the opinions in evaluating the RFC.

Case 1:15-cv-01074-LCB-JEP   Document 16   Filed 02/14/17   Page 10 of 15

affect, unremarkable thought processes, "adequate memory function[,] and only mild distractibility." (Tr. at 27, 25, 839-857.) Specifically as to Plaintiff's concentration, persistence, and pace, the ALJ noted that the May 2014 Turning Point assessment reflected that Plaintiff was "able to recite her problems without difficulty, including details regarding the placement of her children in foster care," and she was "oriented and cooperative with estimated average intelligence" and was "mildly distractible." (Tr. at 20-21.)[6]

In addition, with respect to the other evidence in the record, the ALJ noted Plaintiff's May 2014 Durham Center Access examination, in which Plaintiff's "attention and concentration and thought processes were normal." (Tr. at 25.) The ALJ also cited a Third Party Function Report from Plaintiff's mother, reporting that Plaintiff was "able to watch television, sew, talk to friends and family on the telephone and attend church services." (Tr. at 20, 318.) The ALJ also addressed the evaluation of Dr. Kantesaria, the examining psychiatric consultant, who concluded that Plaintiff "was capable of performing simple, repetitive tasks, relating to others and tolerating some stress and pressures associated with day-to-day work activity." (Tr. at 27.) The ALJ noted that, "[l]ikewise, Dr. Fairchild concluded the claimant was able to perform simple tasks and work-like procedures within a schedule and maintain an ordinary routine." (Tr. at 27.)

The ALJ then ultimately adopted RFC limitations that took Dr. Fairchild's opinions into account, to the extent that those opinions were given some weight. Specifically, Plaintiff's RFC included the ability to "understand, remember and carry out simple instructions involving

---

[6]The May 2014 assessment was not performed by Dr. Fairchild (see Tr. at 839-857), nor do any treatment records from Dr. Fairchild appear in the record.

11

up to a four-step process [and] sustain attention and concentration for repetitive tasks with no production quota requirements." These provisions demonstrate the ALJ's consideration of Dr. Fairchild's opinions, discounted for the reasons set out in the administrative decision as discussed above.

As a final matter, Plaintiff's related argument that the ALJ "committed reversible error in failing to re-contact [Dr. Fairchild] as required by 20 C.F.R. § 404.1512(e)" is meritless. (Pl.'s Br. at 12-13.) As Defendant correctly notes, this regulation, which imposed a "duty to recontact" on ALJs when the evidence from a treating physician was inadequate to make a disability determination, has not been in effect since 2012. Instead, pursuant to 20 C.F.R. §§ 404.1520b and 416.920b, such recontact is discretionary.

      B.      Listings 12.04 and 12.06

Plaintiff next argues that substantial evidence fails to support the ALJ's adverse step three finding as to Listings 12.04 and 12.06. Listing 12.04 encompasses affective disorders, including depressive, manic, and bipolar syndromes, and may be met if the claimant experiences certain symptoms set out in Paragraph A of the Listing, resulting in at least two of the criteria set out in Paragraph B of the Listing. Listing 12.06 encompasses anxiety related disorders, and may likewise be met if a claimant experiences certain symptoms set out in Paragraph A, resulting in at least two of the criteria set out in Paragraph B. Although the symptoms differ, both Listing 12.04 and 12.06 set out the following Paragraph B criteria:

    1.     Marked restriction of activities of daily living; or
    2.     Marked difficulties in maintaining social functioning; or
    3.     Marked difficulties in maintaining concentration, persistence, or pace; or
    4.     Repeated episodes of decompensation, each of extended duration.

20 C.F.R. Part 404, Subpart P, Appendix 1 § 12.04(B), 12.06(B). At least two of the Paragraph B criteria must be present.[7]

In challenging the ALJ's step three finding, Plaintiff focuses on the ALJ's treatment of the underlying opinion evidence offered by Dr. Fairchild. As described above, Dr. Fairchild circled "Present" or "Yes" when asked if Plaintiff had "[d]eficiencies of concentration, persistence or pace resulting in frequent failure to complete tasks in a timely manner" and "[r]epeated [e]pisodes of deterioration or decompensation in work or work-like settings." (Tr. at 836, 858.) However, as further explained above, the ALJ assigned less-than-controlling weight to those opinions, particularly noting their conclusory nature. (Tr. at 28.) Based on the record as a whole, the ALJ concluded that Plaintiff had only moderate difficulties with regard to concentration, persistence or pace. The ALJ specifically cited to the Third Party Function Report regarding Plaintiff's ability to watch television, sew, talk to friends and family on the telephone and attend church services, and the May 2014 Turning Point intake interview reflecting her ability to recite her problems without difficulty and reflecting that she was oriented, cooperative, of average intelligence, and only "mildly distractible." (Tr. at 20-21.) The ALJ also found the Plaintiff had not suffered from repeated episodes of decompensation of extended duration. In this regard, Plaintiff's treatment at Durham Center Access in May 2014 does not appear to have been for at least 2 weeks, but even if that were considered an episode of decompensation, Plaintiff has not shown any evidence of three episodes of decompensation within 1 year or an average of once every 4 months, each lasting for at least

---

[7] Alternatively, a claimant may meet the criteria of § 12.04(C) or § 12.06(C) alone. However, in the present case, Plaintiff does not claim that she meets these alternative criteria.

13

two weeks, as required to meet the regulatory criteria. 20 C.F.R. Part 404, Subpart P, Appendix 1 § 12.04(C)(4). The ALJ specifically analyzed Listings 12.04 and 12.06, and found that Plaintiff suffered no more than moderate limitations in any paragraph B criteria. Substantial evidence supports the ALJ's determination as to Listing 12.04 and 12.06.

C.     RFC

Finally, Plaintiff challenges the ALJ's RFC assessment. In particular, Plaintiff contends that her "credible testimony" shows that her physical impairments render her incapable of light work. However, the ALJ specifically found Plaintiff's "statements concerning the intensity, persistence[,] and limiting effects of [her] symptoms . . . not entirely credible," and set out the reasons for this determination at length in his decision. (Tr. at 26-27.) Plaintiff makes no challenge to the ALJ's credibility finding, which, in terms of physical abilities, noted relatively mild objective findings, along with medically managed symptoms and repeated failures to follow through with treatment. (Tr. at 27.) These findings were based on a thorough review of the medical evidence of record. (Tr. at 22-27.)

Plaintiff also claims, again based on her testimony as well as Dr. Fairchild's opinions, that repeated episodes of decompensation and deficiencies in concentration, persistence, or pace render her incapable of any work from a mental standpoint. However, as discussed at length above, the ALJ did not give Dr. Fairchild's opinions controlling weight, but considered the opinions in light of other evidence in the record, and gave the opinions some weight in formulating the RFC. In addition, in considering Plaintiff's mental impairments, the ALJ noted that Plaintiff's health issues and situation, including homelessness, marriage problems, and the loss of custody of her children to Social Services, were clear factors in her anxiety and

14

depression. However, he found that, even according to Dr. Fairchild, Plaintiff remained capable of maintaining an ordinary routine and performing "simple tasks and work-like procedures within a schedule." (Tr. at 27.) In short, the only evidence Plaintiff raises as bases for additional RFC restrictions were sources properly addressed and discounted by the ALJ. Accordingly, the Court finds no error, and the ALJ's decision is supported by substantial evidence.

IT IS THEREFORE RECOMMENDED that the Commissioner's decision finding no disability be AFFIRMED, that Plaintiff's Motion for Judgment on the Pleadings [Doc. #12] be DENIED, that Defendant's Motion for Judgment on the Pleadings [Doc. #14] be GRANTED, and that this action be DISMISSED with prejudice.

This, the 14th day of February, 2017.

                                                          /s/ Joi Elizabeth Peake
                                                    United States Magistrate Judge